**COMBINED COMMERCIAL PROPERTY,**
**EQUIPMENT & VEHICLE SUBLEASE**

This Combined Commercial Property, Equipment & Vehicle Sublease ("Sublease") is entered into and is effective as of this 14th day of December, 2018, between MOTOWN BATTERY COMPANY, INC., a Michigan corporation, whose address is 1026 Rankin Street, Troy, Michigan 48083 ("Sublessor"), and DETROIT BATTERY COMPANY, LLC, a Michigan limited liability company, whose address is 2689 Blue Stem Drive, Zeeland, Michigan 49464 ("Sublessee"), on the following terms and conditions, in consideration of the mutual benefits and covenants set forth below and other good and valuable consideration, the sufficiency of which is acknowledged by the parties, and with the intent to be legally bound hereby, the parties agree as follows:

1. **Term.** The term of this Sublease shall be five (5) years commencing on the 14th day of December, 2018 ("Commencement Date") and expiring on the 31st day of December, 2023.

2. **Premises.** MOTOWN BATTERY COMPANY, INC. is currently the Tenant of 1026 Rankin Street, Troy, Michigan 48083, (hereinafter referred to as the "Premises"). The Landlord and Owner of the building, The John A. Miltimore Trust, amended and restated July 18, 1996 ("Owner" or "Landlord"), has agreed to allow a sublease of the Premises. EXHIBIT A, Consent of Landlord to Sublease.

Pursuant to the authority to sublease the Premises in the attached Consent of Landlord, Sublessor agrees to sublease to Sublessee, and Sublessee agrees to sublease from Sublessor, the entire building and parking lot located at 1026 Rankin Street, Troy, Michigan 48083, hereinafter referred to as the Premises ("Premises").

a. **Excluded Area.** Notwithstanding the foregoing, the following areas of the Premises shall be excluded for the Term of the Sublease:

(1) the car port, storage shed and surrounding area in the back of the Premises. Sublessor may access and use such area at any time, for any purpose, including storing vehicles and equipment, provided reasonable care is taken to not interrupt the business activities of Sublessee.

b. **Permitted Usages.** Notwithstanding the foregoing, Sublessee shall allow the following usages of the Premises during the Term of the Sublease:

(1) To remain in their current locations one (1) sign hanging on the exterior of the building of the Premises and one (1) sign hanging on an office door within the building of the Premises for KESELMORE, LLC, a Michigan limited liability company ("Keselmore"). Keselmore is also permitted to use the Premises as a mailing address. An agent of Keselmore may enter the Premises once per week to collect mailings on a day and time mutually agreeable to Sublessee and Keselmore. Finally, Keselmore is permitted to use the office with the sign on the door if necessary for the limited purpose of a meeting with the State.

(2) The Landlord/Owner of the building to utilize the water, electricity, bathroom and laundry facilities on the Premises for up to 2 weeks per year.

(3) When available, the Sublessor to utilize one bay for the limited purpose of repairing a plow truck(s) during the winter plow season, which begins annually on approximately November 15 and ends annually on approximately April 15th. Sublessor will provide Sublessee with text message notice if the bay is needed for a repair.

(4) Except as set forth in this Section 2, the current Tenant and Sublessor has until midnight on December 16, 2018 to clean out the office and move personal belongings and furniture from the office to an unused area on the Premises for temporary storage; and Sublessor then has until midnight on December 30, 2018, to vacate the Premises of personal belongings, products and inventory. If Sublessee desires, Sublessee will make an offer to purchase the Sublessor's scrap inventory and finish products at current market value on or before December 17, 2018.

(5) Sublessor shall have access to the tool room so that Sublessor can utilize his tools, which tool room Sublessor will keep locked at all times, provided that Sublessor provides notice to Sublessee, verbal or text messaging notice, prior to entry.

(6) If Sublessor receives any mail at the Premises, Sublessor or an agent may enter the Premises to collect mailings on a day and time mutually agreeable to Sublessee and Sublessor.

c. **Expiration of Month-to-Month Tenancy**. Sublessee previously held a Month-to-Month Tenancy with Landlord for the Premises. Sublessee acknowledges and agrees that the Month-to-Month Tenancy with Landlord expired on November 30, 2018, and is no longer valid and in effect.

3. **Option to Renew.** Sublessee shall have the first option to renew this Sublease on the expiration of the initial term of the Sublease for two (2) additional terms of five (5) years each by giving written notice of renewal to Landlord and Sublessor at least thirty (30) days before this Sublease expires. The rate of Rent on renewal shall be negotiated at that time between the Parties, taking into consideration whether the same, different or additional Vehicles will be leased by Sublessor to Sublessee. Sublessee shall be allowed to hold over on a month-to-month basis at the same rate of Rent being paid in the month proceeding the end of the original Term so long as the parties are negotiating a renewal of this Sublease in good faith.

4. **Rent.** "Rent" shall be defined as all amounts due by Sublessee to Sublessor under Sections 4 and 5, and under any other Sections of this Sublease. If Sublessee fails to pay any Rent within seven (7) days after same is due, such unpaid amount shall bear a five percent (5%) late charge, which will be immediately due and payable. The payment of such late charge shall be in addition to all other rights and remedies available to Sublessor in the case of non-payment of Rent or Default. For any partial month, rent and additional rent shall be prorated on the basis of a thirty (30) day month.

a. **Base Rent.** Sublessee shall pay Sublessor as Base Rent for the Premises equal monthly installments of Four Thousand Two Hundred and 00/100 Dollars ($4,200.00), commencing on the Commencement Date. Rent for any partial month of occupancy, including the initial month, shall be prorated for that month. Monthly installments of rent shall be due and payable in advance on the first day of each calendar month thereafter. Rent payments shall be made out to Sublessor and delivered or sent to: **2375 Cloverlawn Avenue, Bloomfield Hills, MI 48302** or any other place designated in writing by Sublessor.

b. **Additional Rent.** As additional rent, Sublessee shall timely pay all real and personal property taxes and assessments levied and made against the Premises directly to the authority levying such tax. All taxes and assessments levied against the Premises and services contracted for by Sublessee shall be paid for by Sublessee immediately on presentation of the invoice so that no past due accounts arise and no liens are placed on the Premises. In the event Sublessee fails to pay any bill when due or payable and such charge potentially could create a lien on the Premises then Sublessor shall be entitled to pay such bill, and invoice Sublessee 125% of the cost of any such charge.

c. **Utilities.** Sublessee agrees to be responsible for the payment of all of the utility services for the Premises, including water and sewer, gas, electricity, trash removal, internet, and other services delivered to the Premises, and all services identified on EXHIBIT B. Sublessee agrees that within 30 days of the execution of this Sublease, Sublessee will assume liability for all utilities and services identified on EXHIBIT B. All utilities listed in EXHIBIT B shall be transferred to Sublessee with Sublessor's assistance for Sublessee's exclusive use, but Rent for utilities shall begin on the Lease Commencement Date.

5. **Equipment and Vehicles Rent.** Sublessor shall also lease to Sublessee, and Sublessee shall pay as "Rent" for the Equipment and Vehicles located at or in the Premises described in EXHIBIT C.

a. **Equipment.** The Rent for all of the Equipment listed in EXHIBIT C shall be included in the payment of the Base Rent of Four Thousand Two Hundred and 00/100 Dollars ($4,200.00) per month identified in Section 4a. above.

b. **Vehicles.** Sublessee shall pay Sublessor as additional Rent for the Vehicles identified on EXHIBIT C equal monthly installments in the amounts listed on EXHIBIT C, commencing on the Commencement Date and due on the first day of each calendar month. Monthly installments of Rent for the Vehicles shall be paid in accordance with all of the terms for Rent identified in Section 4 above.

c. **Purchase Option.** Upon the termination of this Sublease, Sublessee shall have the option to renew this Sublease or purchase the Equipment and Vehicles listed in EXHIBIT C for fair market value. Fair market value shall be determined by an appraisal provided by an appraiser paid for equally by the parties and selected by mutual agreement of the parties.

d. **Maintenance of Leased Vehicles & Equipment.** Sublessee agrees, at Sublessee's sole cost and expense, to keep the Equipment and Vehicles at all times during the Term of this Sublease in good repair and operating condition, to provide regular and preventative maintenance required for ownership of vehicles as described in EXHIBIT D, and keep the Equipment and Vehicles free of any and all liens and encumbrances. Sublessee shall not make or permit any unlawful use or handling of the Equipment and Vehicles and shall not, without Sublessor's prior written consent, make or permit any changes, alterations, or improvements in or to the Equipment and Vehicles or remove from the Equipment and Vehicles any parts, accessories or attachments; however, Sublessor specifically consents to Sublessee affixing signage to the Vehicles In the event Sublessee allows a lien or encumbrance to be placed on the Equipment or Vehicles, Sublessor shall be entitled to pay such bill, and invoice Sublessee 125% of the cost of any such charge.

e. **Location of Equipment and Vehicles; Title**. Sublessee shall, at all times, maintain the Equipment and Vehicles at the Premises. Sublessee shall not remove the Equipment and Vehicles from the Premises outside of the normal course of business without the prior written approval of the Sublessor. The normal course of business for Sublessee shall include for repairs and maintenance and/or overnight or out of state delivery and return to the Premises. Sublessor shall have the right to inspect the Equipment and Vehicles twice annually at a time mutually agreed upon by the parties and pursuant to Section 15 herein during the Term of this Sublease. If Sublessor believes the same to be misused, abused or neglected, Sublessor may summarily remove and repossess Equipment and Vehicles upon five (5) days prior written notice to Sublessee, during which time Sublessee may rectify any misuse, abuse or neglect. All of the Equipment and Vehicles shall remain at all times during the Term of this Sublease the property of Sublessor. All of the Equipment and Vehicles are, and at all times shall remain, separate items of personal property.

Notwithstanding the contrary language in this Section 5(e), Sublessee understands and agrees that Vehicles 6, 10 & 11 ("Ford Pickup Trucks"), which are specifically identified in EXHIBIT C, at all times during the "snow plow season" of November 15 through April 15, must remain on the Premises, be fully accessible to Sublessor, and be maintained in good working condition. During the snow plow season, J & C Plowing, LLC will have full access to the use of these 3 Ford Pickup Trucks 24 hours per day, 7 days per week in case of a snow event. If a snow event occurs that requires Sublessor to utilize the Ford Pickup Trucks, Sublessor will immediately notify Sublessee either verbally or by way of a text message to Sublessee stating that a snow event has occurred that requires use of the Ford Pickup Trucks. As compensation for the loss of use of the Ford Pickup Trucks by Sublessee, if any Vehicle is unavailable to Sublessee during any portion of a standard business day (9:00am - 5:00pm, Monday through Friday), Sublessee will receive a rent abatement that month of $25 per day per Vehicle that is unavailable during the standard business day.

f. **Additional Rent.** In addition to the Sublease monthly payment, Lessee shall pay as additional Rent any and all personal property taxes, sales and use taxes, other direct taxes and registration fees, if any, required by any Federal or State government or any county, city or other taxing authority and allocated by Sublessor on either an individual or prorated basis for any piece or unit of Equipment and Vehicle based on purchase price, value, possession, use, situs, rental or operation thereof. All taxes and assessments levied against the Equipment and Vehicles shall be paid for by Sublessee immediately on presentation of the invoice so that no past due accounts arise and no liens are placed. In the event Sublessee fails to pay any bill when due or payable and such charge potentially could create a lien then Sublessor shall be entitled to pay such bill, and invoice Sublessee 125% of the cost of any such charge.

6. **Acceptance of Occupancy.**

**a.** Sublessee shall commence occupancy of the Premises on the Commencement Date, and shall begin payment of Rent as of the Commencement Date and Sublessee's actual possession of the Premises. Sublessee has inspected the Premises, Equipment and Vehicles, finds them in good order and repair, finds them acceptable for Sublessee's intended use of the Premises and accepts the Premises and Equipment in "As Is" condition and the Vehicles in good working condition.

b. **Actual Possession.** "Actual possession" shall be defined as providing a set of keys and control over the Premises, Equipment and Vehicles described in Exhibits B and C to the Sublessee with the exceptions stated herein in Section 2 and with the exception of the three (3) 2018 Ford Transit vehicles. Sublessee's rent and actual possession of the 2018 Ford Transit vehicles shall begin when Sublessor attains possession of the 2018 Ford Transit vehicles and transfers possession to Sublessee.

Notwithstanding any other provision of this Sublease, if actual possession is not provided by December 14, 2018, then Sublessee may terminate this Sublease and thereafter the parties shall have no liabilities to each other.

7. **Use.** The Premises, Equipment and Vehicles are to be used, stored, maintained and occupied by Sublessee in accordance with their normal business activities. No activity shall be conducted on the Premises that does not comply with local laws, ordinances, and regulations.

8. **Sublessee's Possession and Enjoyment.** Sublessee, on payment of the Rent at the time and in the manner stated above and on performance of all the foregoing covenants, shall and may peacefully and quietly have, hold, and enjoy the Premises for the term of this Sublease. Except in accordance with Section 2, Sublessor shall not enter the Premises at any time for any reason without the prior written consent of Sublessee, which may be withheld in Sublessee's sole discretion.

9. **Signs. With the exceptions stated in Section 1(b),** Sublessee shall have the exclusive right to place signs on the exterior of the building or any part of the Premises Sublessee desires. Such signs shall comply with all state and local laws and ordinances.

10. **Insurance.**

a. **Premises and Equipment.** Sublessor shall insure the Premises and Equipment, at Sublessee's sole expense but subject to Sublessee's approval as to cost, including all buildings and improvements, for the replacement cost of the buildings and improvements, against loss or damage under a policy or policies of fire and extended coverage insurance, including additional perils. The Sublessor shall obtain and maintain in full force general liability and property damage insurance with coverage of not less than One Million Dollars ($1,000,000.00) for injury or death to any one person, Two Million Dollars ($2,000,000.00) for injury or death to more than one person, and Two Hundred Fifty Thousand Dollars ($250,000.00) for property damage, covering all claims for injuries to persons or property occurring on or around the Premises. All policy limits may be met by an umbrella policy. All policies shall name the Owner and the Sublessee as an additional insured party. Each insurance policy shall also contain a provision exempting the Sublessor from any loss of coverage as an additional insured party due to the acts of the Sublessee. All policies must also provide for notice by the insurance company to the Owner and the Sublessee of any termination or cancellation of a policy at least thirty (30) days in advance. Upon the execution of this Sublease, Sublessor shall deliver to Sublessee a certificate of insurance evidencing said insurance coverage.

b. **Automobile Liability Insurance**. Sublessor shall provide and maintain, at Sublessee's sole expense, but subject to Sublessee's approval as to cost, commercial automobile liability insurance over all Vehicles included in Section 5. Such insurance shall apply to bodily injury and property damage in a combined single limit of not less than One Million Dollars ($1,000,000) per

accident. All policies shall name the Sublessee as an additional insured party. Each insurance policy shall also contain a provision exempting the Sublessor from any loss of coverage as an additional insured party due to the acts of the Sublessee. The policy shall also include Guaranteed Auto Protection (GAP) insurance to cover the amount owed on the vehicles and the amount covered by the insurance policy. If the policy has GAP insurance in place at the time of a loss, than any total loss of a Vehicle shall only be replaced from insurance proceeds and neither party shall be liable to the other for any out of pocket costs to replace a Vehicle, unless that party or its agents intentionally caused the loss, were grossly negligent or operated the Vehicles while under the influence of drugs or alcohol. Upon the execution of this Sublease, Sublessor shall deliver to Sublessee a certificate of insurance evidencing said insurance coverage.

c. **Casualty.** Sublessee agrees to notify Sublessor of any Casualty within ten (10) business days of the occurrence of such Casualty. In the event of a Casualty, Sublessee shall either (a) make the necessary repairs to restore the Equipment and Vehicles to good working order at Sublessee's expense; or (b) submit a claim to its insurer, if covered thereby, assuring the necessary repairs are made to restore the Equipment and Vehicles to good working order and pay any associated costs and expenses, including deductibles, associated with the insurance claim. Sublessee hereby releases and waives any and all defenses available to a bailee at law. The provisions of this Section shall survive the termination of the Lease.

11. **Expenses - Premises.** Sublessee shall pay all costs and expenses incurred in operating the Premises, except the maintenance and repair of the exterior walls and roof of the building in which the Premises are situated and the surrounding parking lot.

12. **Repairs and Maintenance - Premises.** Sublessor shall be responsible for the exterior walls and roof of the building in which the Premises are situated and the surrounding parking lot. With the exception of Sublessor's obligations for maintenance, repairs, and replacement, Sublessee shall be obligated to repair and maintain the Premises at Sublessee's expense. The Premises shall be kept in good and safe condition, including the windows, doors, floors, ceiling, interior walls, glass in or outside of the building, kitchen appliances, the lighting and electrical fixtures, the plumbing fixtures, heating and cooling systems, and any other system or equipment within the Premises. Sublessee shall also maintain in good condition the sidewalk, driveway and parking lot adjacent to the Premises, shall regularly sweep those areas and pick up any trash or debris in the area, and during the winter months shall keep the sidewalk, driveway and parking lot adjacent to the Premises clear of snow and ice. Notwithstanding any of the foregoing, any necessary full replacement of any structural component; mechanical, equipment, or plumbing system; or pavement shall be the responsibility of the Sublessor. If Sublessor does not replace any of the foregoing within ten (10) days' notice from Sublessee (30 days for pavement), then Sublessee may, but shall not be obligated to, replace any of the foregoing and deduct as a set off the cost of which from future rent obligations until made whole in full for the cost of replacement.

13. **Alterations - Premises.** Sublessee may remodel and make improvements and attach fixtures to the Premises with the approval of the Landlord, which shall not be unreasonably withheld. Any work done shall be without injury to any structural portion of the building on the Premises. Any improvements constructed or fixtures attached pursuant to this Section 13 shall become the property of Sublessor upon the termination of this Sublease unless expressly agreed to by the

Landlord or Sublessor in writing prior to the addition of the improvement or fixture. Any improvement or fixture which the Landlord/Sublessor agrees may be removed by Sublessee upon the termination of this Sublease, shall be removed by Sublessee within seven (7) days after the termination of this Sublease. All property that was permitted to be removed by Sublessee at the end of the term, but which remains on the Premises for thirty (30) days after Sublessee vacates the Premises may be deemed abandoned and may, at the election of the Landlord or Sublessor, either be retained as Landlord's property or may be removed from the Premises by Landlord or Sublessor. All improvements contracted for by Sublessee shall be paid for by Sublessee immediately on presentation of the invoice so that no past due accounts arise or construction liens are filed. All installations and removals shall be at Sublessee's expense and Sublessee shall repair any damage from installations or removals to return the Premises to the same condition as of the Commencement Date, reasonable wear and tear excepted.

14. **Trade Fixtures - Premises.** All unattached trade fixtures and moveable equipment installed by Sublessee in connection with the business conducted by it on the Premises shall remain the property of Sublessee and may be removed by it at the expiration of this Sublease. Sublessee shall repair any damage caused by such removal and restore the Premises to their original condition as of the Commencement Date within seven (7) days after the termination of this Sublease, reasonable wear and tear excepted. All of Sublessee's personal property, including trade fixtures, on the Premises shall be kept at Sublessee's sole risk.

15. **Entry and Inspection.** Notwithstanding Section 8 above, Landlord, Sublessor and Sublessor's agents may enter the Premises for the purpose of inspection and repair of the Premises, to protect the Premises or the Leased Equipment and Vehicles from damage, to prevent illegal or unsafe conditions on the Premises, in case of Abandonment, or in the case of Sublessee's Default. Verbal or written, including text messaging, notice shall be provided to Sublessee at least 24 hours prior to entry, except in the case of emergency, in which case immediate entry shall be allowed but notice still given to Sublessee. Landlord, Sublessor or Sublessor's agents shall undertake all possible precautions to not interfere with Sublessee's business.

16. **Assignment and Subletting.** Sublessee may assign, sublet, or otherwise transfer or convey its interest, or any portion of its interest, in the Premises to any entity with the prior written consent of Landlord and Sublessor.

17. **Abandonment of Premises, Equipment and Vehicles.** Sublessee shall not vacate or abandon the Premises, Equipment or Vehicles at any time during the term of this Sublease. Abandonment shall be defined as: (1) Sublessee has been absent from the Premises for at least **30 days** without explanation or (2) at least **15 days** have passed since the Sublessee was supposed to pay rent and it appears to the Landlord or Sublessor that Sublessee has vacated the Premises or property. In the event Sublessee abandons or vacates the Premises, Equipment or Vehicles or is dispossessed by process of law or otherwise, Sublessor shall have the right to automatically repossess the Premises, Equipment and Vehicles without notice or further legal process. Any personal property belonging to Sublessee left on the Premises may be taken and stored by Sublessor and Sublessor may then charge Sublessee a reasonable monthly fee for the storage of that personal property. Any fee charged by Sublessor for this purpose shall be deemed to be additional rent under this Sublease and payable immediately. Sublessor shall provide Sublessee with written notice of the property

being stored and Sublessee shall have 30 days to retrieve its property and pay storage fees. After 30 days, if Sublessee has not claimed and paid storage fees for its personal property, the property shall be deemed legally abandoned; and Sublessor has the right to sell or dispose of the personal property of Sublessee and retain all proceeds from the sale.

18. **Destruction of Premises.** If the Premises are partially damaged or destroyed, which shall include the cessation of any utilities for more than five (5) days, through no fault of Sublessee, Sublessor shall, at its own expense, promptly repair and restore the Premises. Rent shall abate in whole or in part during the period of restoration according to the amount of destruction if the destruction was not caused by Sublessee. If the Premises are totally destroyed through no fault of Sublessee or if the Premises cannot be repaired and restored within one hundred eighty (180) days after the event of destruction, either party shall have the right to terminate this Sublease, effective as of the date of the event, by giving the other party written notice of termination within ten (10) calendar days after the occurrence of the event. If the notice is given within that time period, this Sublease shall terminate, and rent shall be adjusted between the parties to the date of the occurrence of the event. If the notice is not given within the required period, this Sublease shall continue and Sublessor shall repair the Premises.

19. **Condemnation.** If the Premises or any part of them are taken for any public or quasi-public purpose pursuant to any power of eminent domain, or by private sale in lieu of eminent domain, this Sublease shall terminate at the option of Landlord or either party, effective as of the date the public authority takes possession. If the Landlord and the parties do not elect to terminate this Sublease, then rent shall be abated in proportion to the amount of the Premises that is taken. All damages for the condemnation of the Premises or building thereon that is awarded for the taking shall be payable to and be the sole property of Landlord or Sublessor.

20. **Indemnity.** Sublessee agrees to indemnify and defend Sublessor against and hold Sublessor harmless from any liability, loss, damage, cost, or expense, including attorney and professional fees, based on any claim, demand, suit, or action by any person or entity with respect to any personal injury (including death) or property damages, from any cause with respect to Sublessee's use of the Premises, Equipment, Vehicles or Utilities, or the use by Sublessee's agents, contractors, servants, licenses, employees or invitees, except for liability resulting from the intentional acts or gross negligence of Sublessor or its employees, agents, invitees, or business visitors.

Sublessee hereby agrees to indemnify and hold Sublessor harmless from and against all losses and damages Sublessor may sustain or suffer because of: (a) the loss of or damage to the Equipment and Vehicles because of any collision, fire, act of God, theft, flood, explosion or other casualty while in the custody, possession or control of Sublessee; (b) all damage, claims, costs, demands, penalties, liability and expenses resulting from or arising out of the location, condition, use or alleged use of the Equipment and Vehicles while in the possession or control of Sublessee; (c) the seizure of any or all of the Equipment and Vehicles; (d) the failure of Sublessee or any of its employees, agents or representatives to maintain the Equipment and Vehicles as agreed and provided herein; (e) all fines, forfeitures, seizures, penalties and liabilities arising from a violation by Sublessee or any of its employees, agents or representatives, of any law, rule, regulation or order as set forth herein; (f) all damage, claims, costs, liens, demands, penalties, expenses or liability whatsoever arising from the storage, maintenance, handling, repair, operation or alleged

operation of any of the Equipment and Vehicles by Sublessee or any of its employees, agents or representatives; and (g) all damages, claims, costs, demands, liability and expenses from any liability to any person or on account of any damage to person or property arising out of the sole acts or omissions of Sublessee or its employees, agents or representatives in the use, operation, alleged use or operation, storage, maintenance, handling or repair of any of the Equipment and Vehicles. In no event will Sublessor be liable for losses or damages caused by Sublessee's acts or omissions in performing its responsibilities hereunder or arising out of Sublessee's use or inability to use the Equipment and Vehicles.

21. **Mutual Releases.** Sublessor and Sublessee, and all parties claiming under them, mutually release and discharge each other from all claims and liabilities arising from or caused by any hazards covered by insurance on the Premises or covered by insurance in connection with property on or activities conducted on the Premises regardless of the cause of the damage or loss. Sublessor and Sublessee shall each cause appropriate clauses to be included in their respective insurance policies covering the Premises waiving subrogation against the other party consistent with the mutual release in this Section 21.

22. **Security Agreement.** As an inducement to Sublessor for entering into this Sublease for the Premises, Vehicles and Equipment, and concurrently with the execution of this Sublease, Sublessee shall execute a Security Agreement which covers all of the assets identified in Exhibits B and C. Sublessor shall file a UCC-1 with the State of Michigan which also covers the same assets. Should Sublessee default in any of the terms of this Sublease, then the terms of the Security Agreement shall extend to all other assets of Sublessee, and Sublessor shall be entitled to file a corresponding UCC-1 which covers all of the assets of Sublessee. Sublessee authorizes Sublessor or its agent as attorney in fact for the limited purpose of executing in Sublessee's name and filing any Uniform Commercial Code financing statements or similar documents authorized under this Section or the Security Agreement. Such authorization shall not constitute a general power of attorney from Sublessee and shall not be effective for any purpose other than to execute UCC-1 filings relating to the Equipment, Vehicles and other assets.

23. **Subordination.** The Sublessor reserves the right to subject and subordinate this Sublease at all times to the lien of any mortgage or mortgages now or hereinafter placed upon the Sublessor's interest in the said premises and on the land and buildings of which the Premises are a part or upon any buildings hereinafter placed upon the land of which the Premises form a part, provided that Sublessee obtains a signed standard form subordination, non-disturbance, and attornment agreement from the mortgagee. Sublessee agrees to provide any mortgagee with a customary tenant's estoppel letter at the request of any mortgagee with respect to the status of this Sublease or any collateral assignment of this Sublease or the rents under it that Sublessor may make to any mortgagee as additional security for the indebtedness secured by the mortgage.

24. **Default and Termination.** A party shall be in default under any of the following events ("Default"):

a. **Sublessee Default.** Sublessee shall be deemed in Default of this Sublease upon Sublessee making any assignment for the benefit of creditors or a receiver is appointed for Sublessee or its property; if any proceedings are instituted by or against Sublessee in bankruptcy (including reorganization) or under any insolvency laws; upon the dissolution of Sublessee; upon

the failure to pay any Rent, Base Rent, Additional Rent, or other monies owing to Sublessor; upon Sublessee's failure to perform any obligation under this Sublease; upon the filing of a lien against the Premises, Equipment or Vehicles due to Sublessee's failure to pay an obligation; upon abandonment; or upon Sublessee's breach of any provision set forth in this Sublease. Further, Sublessee shall hold and save Landlord and Sublessor harmless from and indemnify either for any and all loss, cost, damage, injury or expense, including attorney's fees, arising out of or in any way related to such liens.

Sublessee shall have ten (10) days from written notice from the Sublessor for Default to cure the Default before any remedies may be exercised. Upon a Default of Sublessee, after the expiration of the ten (10) day cure period, Sublessor may take or exercise any one or more of the following actions: (1) re-enter the Premises and take possession thereof and remove all persons and property in possession of the Sublessee or located at the Premises and terminate this Sublease; (2) institute proceedings to evict Sublessee and hold Sublessee liable for all unpaid rent and other damages incurred by Sublessor; (3) repossess Sublessor's Vehicles and Equipment, and/or (4) relet the Premises, Vehicles and Equipment. Upon termination of this Sublease by the Sublessor, there shall be no further liability between the parties beyond the remedies listed above. Sublessor shall have any and all rights and remedies available to it at law and equity, including all of the rights and remedies of Landlord described in the Sublease, which are hereby incorporated herein and made a part hereof with the same force and effect as if herein specifically set forth in full, and that wherever in the Sublease rights and remedies are given to Landlord, the same shall be deemed to refer to Sublessor. Upon default and after all cure periods have passed, Sublessor may exercise remedies without service of notice or resort to legal process and without Sublessor being deemed guilty of trespass, or liable for any loss or damage.

b. **Sublessor Default.** Sublessor shall be deemed in Default of this Sublease upon Sublessor making any assignment for the benefit of creditors or a receiver is appointed for Sublessor or its property; if any proceedings are instituted by or against Sublessor in bankruptcy (including reorganization) or under any insolvency laws; upon the dissolution of Sublessor; upon the failure of Sublessor to perform any obligation under this Sublease; or upon Sublessor's breach of any provision set forth in this Sublease. Sublessor shall have ten (10) days from written notice from the Sublessee for Default to cure the Default before any remedies may be exercised. Upon a Default of Sublessor, after the expiration of the ten (10) day cure period, Sublessee may terminate this Sublease as to the Sublessor and look to the Owner as the new and lawful landlord. Upon termination of this Sublease as to the Sublessor by the Sublessee, there shall be no further liability between the parties beyond the payment of damages owed to Sublessee by Sublessor under this Sublease.

25. **Attornment.** Sublessee shall not disaffirm this Sublease or any of its obligations hereunder and at the request of the mortgagee or the purchaser at a foreclosure sale, Sublessee shall attorn to such mortgagee or purchaser and if required, execute a new Sublease for the Premises on all the same terms and conditions of this Sublease, except that the term of such new Sublease shall be for the balance of the term of this Sublease.

26. **Surrender of Premises.** Sublessee shall surrender the Premises to Sublessor at the termination of this Sublease broom clean and in the same condition as at the Commencement Date, excepting normal wear and tear.

27. **Notices.** Unless otherwise specified in this Lease, any notice required under this Sublease shall be in writing and sent by electronic mail (e-mail), or registered or certified mail, return receipt requested, or national overnight courier to the addresses of the parties set forth above or to another address that a party substitutes by written notice by the same. Notices shall be effective as of the date of first attempted delivery.

28. **Limitation of Liability.** Except as specifically stated herein, in no event shall Landlord or Sublessor ever be liable to Sublessee for penalties or liquidated damages, or for special, indirect, consequential or incidental losses or damages including, but not limited to, lost profits, lost or damaged data, loss of use of facility or equipment, or the failure or increased expense of operations, regardless of whether any such losses or damages are characterized as arising from breach of contract, breach of warranty, tort, strict liability or otherwise, even if Sublessor is advised of the possibility of such losses or damages, or if such losses or damages are foreseeable.

29. **Force Majeure.** In no event shall Landlord or Sublessor be liable for the failure to perform any obligation under this Sublease in the event that either is prevented from so performing by strike, lockout, breakdown, accident, order or regulation of or by any governmental authority, or failure of supply, or inability by the exercise of reasonable diligence to obtain supplies, parts or employees necessary to furnish such services, or because of war or other emergency, or for any similar or dissimilar cause beyond reasonable control ("Force Majeure"), or for any cause due to any act or neglect of Sublessee or its servants, agents, employees, licensees, or any person claiming by, through or under Sublessee.

30. **Construction Liens.** Sublessee shall not permit any construction liens to be filed against the Premises. In the event any such lien is filed, Sublessee shall cause it to be discharged within fifteen (15) days and, upon Sublessee's failure to do so, Landlord or Sublessor may discharge such lien and Sublessee shall reimburse Landlord or Sublessee for the cost thereof, upon demand. Further, Sublessee shall hold and save Landlord and Sublessor harmless and indemnify either for any and all loss, cost, damage, injury or expense, including attorney's fees, arising out of or in any way related to such liens.

31. **Security/Tracking for Vehicles.** Sublessee acknowledges and agrees that neither Landlord nor Sublessor is providing any security services with respect to the Premises, Equipment or Vehicles leased by Sublessee, and that Landlord and Sublessor shall not be liable to Sublessee for, and Sublessee waives any claim against either with respect to, any loss by theft or any other damage suffered or incurred by Sublessee in connection with any unauthorized entry or breach of security with respect to the Premises. Sublessee is permitted to add cameras to the Premises for security purposes and employee management. Sublessee agrees to install and maintain Fleetmatics /Verizon Reveal tracking software or a similar tracking device on all Vehicles subject to this Sublease.

32. **Security Deposit**. Sublessee has paid a Security Deposit equal to Two Thousand and 00/100 Dollars ($2,000.00) concurrently with the signing of this Sublease. Sublessee shall thereafter pay an additional One Thousand 00/100 Dollars ($1,000.00) per month together with the payment of Rent in Section 4 for eight (8) months to increase the total Security Deposit paid by Sublessee to Ten Thousand and 00/100 Dollars ($10,000.00). Sublessor hereby acknowledges the receipt of the first payment of the Security Deposit in the amount of $2,000.00 with the signing of this Sublease. The funds will be held at PNC Bank. If Sublessee defaults in any of the covenants of this Sublease, Sublessor has the right, but not the obligation, to use, apply or retain all or any part of the Security Deposit for the payment of Rent, damages or other charges which Sublessor may expend by reason of Sublessee's default. If Sublessor uses, applies or retains all or any part of the Security Deposit, Sublessee shall pay, as Additional Rent, on or before the next Rent Day, such amount so that Sublessor shall have the full Security Deposit on hand at all times. If Sublessee fully complies with all the covenants of this Sublease, the Security Deposit will be returned to Sublessee without interest after the termination of this Sublease and the surrender of possession of the Premises to Sublessor. In the event of a sale or other transfer of Landlord's interest in the Property, Sublessor or Landlord may transfer the Security Deposit to the purchaser or transferee and Sublessor and Landlord shall be released from all liability for the return of the Security Deposit. Sublessee shall have no legal power to assign or encumber the Security Deposit.

33. **Personal Guaranty**. As security for the payment of Rent and as an inducement for Christopher Miltimore to purchase and lease the Vehicles identified in EXHIBIT C for the benefit of Sublessee, the undersigned Christopher Gelineau has agreed to personally guaranty the Additional Rent obligations listed on EXHIBIT C.

34. **Entire Agreement.** This Sublease contains the entire agreement of the parties with respect to its subject matter, and this Sublease may not be amended or modified except by a written instrument executed by both of the parties to this Sublease.

35. **Waiver.** The failure of either party to enforce any covenant or condition of this Sublease shall not be deemed a waiver of its right to enforce each and every covenant and condition of this Sublease. No provision of this Sublease shall be deemed to have been waived unless the waiver is in writing.

36. **Fees and Expenses.** Any fees, costs, or expenses incurred by a prevailing party enforcing the other party's obligations under this Sublease, including reasonable attorney fees, shall be due and payable immediately under the Sublease.

37. **Binding Effect.** This Sublease shall be binding on and inure to the benefit of the parties to this Sublease and their respective successors and permitted assigns.

38. **Time is of the Essence.** Time shall be of the essence in the performance of this Sublease.

39. **Captions and Headings.** The captions and headings used in this Sublease are intended for convenience and are not to be used in construing this Sublease. The provisions of this Sublease will be deemed severable, and if any provision or part of this Sublease is held illegal, void, or invalid under applicable law, such provision or part may be changed to the extent reasonably

necessary to make the provision or part, as so changed, legal, valid, and binding. If any provision of this Sublease is held illegal, void, or invalid in its entirety, the remaining provisions of this Sublease will not in any way be affected or impaired but will remain binding in accordance with their terms.

40. **Applicable Law.** This Sublease shall be governed by and construed in accordance with the laws of the State of Michigan. Venue for any matter in connection with or arising out of this Sublease shall be in Oakland County, Michigan, in a court of competent jurisdiction, or the U.S. District Court for the Eastern District of Michigan for federal matters, without regard to any conflict of law provisions and notwithstanding that any party is or may later become domiciled in a different state or jurisdiction.

41. **Counterparts and Electronic Signature.** This Sublease may be executed in counterparts, all of which together will be deemed an original of this Sublease. A facsimile signature or any other electronic signature shall be deemed and constitute an original signature and shall be binding and accepted as original signature.

42. **Survival.** The provisions of Sections 3, 5(c), 10, 13, 14, 17, 20, 22, 25, 28, 33 and 36 shall survive the termination or expiration of this Lease for two years.

43. **Authority.** The parties each represent that they are organized and validly existing in good standing under the laws of the state of Michigan; and the representative below has full power and authority to enter into and perform its obligations under this Agreement; the execution, delivery, and performance of this Agreement has been duly authorized by all necessary action of the officers and managers and will not violate either party's articles of organization, incorporation, operating agreement or bylaws; and this Agreement is the valid and binding obligation of each party, enforceable in accordance with its term.

The parties hereto have executed this Sublease as of the date first above written.

**SUBLESSEE**
**DETROIT BATTERY COMPANY, LLC,**
**a Michigan limited liability company**

Hillary Anne Gelineau

**By: HILLARY ANNE GELINEAU**
**Its: Member**

**SUBLESSOR**
**MOTOWN BATTERY COMPANY, INC.,**
**a Michigan corporation**

**By: CHRIS MILTIMORE**
**Its: President**

**By: CHRIS GELINEAU, individually**

# EXHIBIT A

## CONSENT OF LANDLORD TO SUBLEASE

The undersigned, John A. Miltimore as Trustee for the John A. Miltimore Trust, amended and restated July 18, 1996 is the current Landlord and Owner ("Landlord" or "Owner") of the building under a certain unwritten Lease Agreement with respect to the building and improvements located at 1026 Rankin Street, Troy, Michigan 48083 (the "Premises").

Landlord/Owner hereby approves and consents to allow the current Tenant, MOTOWN BATTERY COMPANY, INC., a Michigan corporation, whose address is 1026 Rankin Street, Troy, Michigan 48083, to sublet the Premises to DETROIT BATTERY COMPANY, LLC ("Sublessee"), a Michigan limited liability company, whose address is 2689 Blue Stem Drive, Zeeland, Michigan 49464.

Landlord/Owner previously had a separate month-to-month tenancy with Sublessee DETROIT BATTERY COMPANY, LLC for a portion of the Premises. Landlord/Owner agrees and acknowledges that this month-to-month tenancy with Sublessee expired on November 30, 2018.

Landlord/Owner of the Premises shall recognize the Sublessee as the lawful tenant in the event of a default by the Tenant MOTOWN BATTERY COMPANY, INC. Upon request by the Sublessee, the Landlord/Owner shall sign a standard form subordination, non-disturbance, and attornment agreement to such effect. Landlord/Owner shall not disturb Sublessee as long as Sublessee is not in Default. Landlord/Owner represents and warrants that the entire Premises is currently leased to the Tenant for a term not less than the term of the Sublease, including all renewal options.

Landlord/Owner:

Dated: Dec 13, 2018

John A. Miltimore in his capacity as
Trustee of the John A. Miltimore Trust,
amended and restated July 18, 1996

## EXHIBIT B

### SCHEDULE OF UTILITIES/SERVICES TO BE ASSUMED BY SUBLESSEE

The utilities and services to be transferred, and for which Sublessee is assuming liability in accordance with Section 5, shall be all of the utilities and services provided as of the Commencement Date, which shall include but not be limited to the following:

1. Facebook login & password for DETROIT BATTERY COMPANY, LLC
2. Phone land line numbers
3. All utilities including water and sewer, gas, electricity, trash removal, and internet
4. Verizon cell numbers for the business, three (3) lines in total:
    a. 248-550-2451
    b. 248-422-8677
    c. 248-463-0267
5. Fleetmatics / Verizon Reveal tracking software
6. Garbage dumpster
7. Website and emails for DETROIT BATTERY COMPANY, LLC: http://www.detroitbatteryco.com
8. Alarm system
9. Annual services provided by subscription, for example magazines, a payroll or billing program, maintenance agreement, etc.

If Sublessor has already prepaid for any utilities/services, and if Sublessee desires to continue the utility/service, the fee for the utility/service will be prorated as of the Commencement Date. Sublessee will reimburse Sublessor for the prorated cost within ten (10) days of the Commencement Date. Otherwise, Sublessor may discontinue the service/utility.

## EXHIBIT C

## EQUIPMENT AND VEHICLES WITH RENT SCHEDULE

I. **EQUIPMENT**

A. The equipment to be leased in accordance with Section 5 shall be all of the equipment on the Premises as of the Commencement Date, which shall include but not be limited to the following:

1. All commercial racking
2. The battery chargers that are currently installed in the building
3. Two (2) electric pallet jacks which require periodic maintenance
4. Scale and turn table
5. Power washer
6. Battery washer
7. Washer & Dryer
8. Air Compressor

B. **Rent Schedule** - All of the equipment identified here shall be included in the Base Rent identified in Section 4b. of the Sublease.

II. **VEHICLES**

A. The following vehicles are to be leased at the following monthly amounts in accordance with Section 5:

1. Toyota Forklift Model 8FGCU25/Serial Number 44318 - $386.00 per month
2. Toyota Forklift Model 8FGCU25/Serial Number 31693 - $386.00 per month
3. 2007 International 8600 Tractor/VIN 1HSHXAHR57J477428 - $2,500.00 per month
4. 2006 TLM Trailer/VIN 2MN07AAE761009625– monthly rate included with 2007 International Tractor
5. 2012 Ford F-650 Box truck/VIN 3FRNF6FA8CV160715 - $2,500.00 per month
6. 2014 Ford F-250 Pickup/VIN 1FTB2B66EEA03435 - $834 per month
7. 2019 Ford Transit 350HD Cargo Van/VIN 1FTRS4XV9KKA18661 - $2,500.00 per month
8. 2019 Ford Transit 350HD Cargo Van/VIN 1FTRS4XV0KKA18662 - $2,500.00 per month
9. ~~2019 Ford Transit Connect XL Van/VIN NM0LS7E28K1387207 - $2,500.00 per month~~
10. 2011 Ford F-350 Pickup/VIN 1FT8X3B66BEB79507 - $833 per month
11. 2010 Ford F-350 Pickup/VIN 1FTWF3B58AEB10432 - $833 per month

B. **Rent Schedule:**

1. Beginning on the Commencement Date for the Term of Sublease:
   Vehicles 1 – 6: TOTAL MONTHLY RENT for Vehicles = $6,606.00
2. Beginning on date of delivery to Sublessee for the balance of the Term of Sublease
   Vehicles 7 – 9: TOTAL MONTHLY RENT for Vehicles = $7,500.00
3. Beginning on March 1, 2019 for the balance of the Term of Sublease:
   Vehicles 10 – 11: TOTAL MONTHLY RENT for Vehicles = $1,666.00

## EXHIBIT D

## VEHICLE MAINTENANCE SCHEDULES

Attached to this Exhibit D are the Maintenance Schedules for all vehicles identified on Exhibit C. Sublessee

In addition, the Toyota Forklifts are required to be on a preventative maintenance schedule by an authorized Toyota Dealer/Distributor. The Sublessor signed a maintenance agreement with Belle Forklift which allows a professional technician to inspect and determine service and maintenance needs for both Forklifts once per quarter. Sublessee will be responsible for payment of the maintenance agreement to Sublessor through the Term of the Sublease as part of the Rent; and in addition, any maintenance fees or costs that arise as a result of those quarterly inspections will be paid for by Sublessee.