# SECURITY AGREEMENT

This Security Agreement (the "Agreement") is made effective December 14, 2018 ("Effective Date"), between Detroit Battery Company, LLC, a Michigan limited liability company (the "Debtor"), and Motown Battery Company, Inc., a Michigan corporation (the "Secured Party") (collectively Debtor and Secured Party are referred to herein as the "Parties"). The Debtor has entered into a Combined Commercial Property, Equipment & Vehicle Sublease with the Debtor dated December 14, 2018 (the "Sublease"). The parties have determined that the Sublease shall be secured and subject to common terms and conditions which will be set forth in a writing.

NOW, THEREFORE, for good and valuable consideration, the parties agree as follows:

1. Grant of Security Interest. To secure the payment, performance and all obligations of Debtor to Secured Party under this Agreement and the Sublease, including any modifications, extensions or renewals, Debtor hereby assigns and grants to the Secured Party a continuing lien on and security interest in the Collateral described in Exhibit A.

2. Perfection of Interest. Debtor shall execute and deliver all papers and instruments, make appropriate book entries, and do all things necessary to effectuate and perfect Secured Party's security interest in the Collateral, including but not limited to execution of financing statement(s). Secured Party shall be vested with all of Debtor's rights with respect to the Collateral.

3. Use of Collateral. Debtor is permitted to use the Collateral for its intended purposes anticipated by the Sublease. Debtor shall not use or permit the use of any Collateral for any unlawful purpose.

4. Inspection. With 24 hours' notice to the Debtor, an agent of the Secured Party may examine and inspect the Collateral and/or Debtor's books and records relating to the Collateral and its maintenance at any time during normal business hours at 1026 Rankin Street, Troy, Michigan 48083 (hereinafter referred to as the "Premises"). The Secured Party may take any other reasonable actions necessary to confirm or ascertain the existence, condition and value of the Collateral. Debtor shall provide this information to Secured Party promptly at a Secured Party's request.

5. Use of Proceeds. Until default, Debtor is permitted to collect the proceeds of Collateral and use such proceeds in its business.

6. Warranties, Representations, and Agreements. Debtor warrants and represents to Secured Party and agrees as follows:

(a) Debtor is a limited liability company and is organized and validly existing in good standing under the laws of the state of Michigan; Debtor has full power and authority to enter into and perform its obligations under this Agreement; the execution, delivery, and performance of this Agreement has been duly authorized by all necessary action of Debtor's managers and will not violate Debtor's articles of organization or operating Agreement; and this Agreement is the valid and binding obligation of Debtor, enforceable in accordance with its terms.

(b) Debtor will not cause or permit any lien, security interest or encumbrance to be placed on any Collateral, except in favor of Secured Party. Debtor will not sell, assign, or transfer any Collateral or permit any Collateral to be transferred by operation of law, except for the benefit of Secured Party in case of an event of Default as defined herein.

(c) Debtor will maintain all records and maintenance records concerning the Collateral at the Premises of the Sublease, and will keep all tangible Collateral at the Premises except as stated in the Sublease.

(d) Debtor will furnish Secured Party with information regarding the Collateral that Secured Party shall request from time to time, and will allow Secured Party to inspect the Collateral and Debtor's records regarding the Collateral as set forth in the Sublease.

(e) Debtor authorizes Secured Party to file one or more financing statements evidencing the security interest granted in this Agreement. Debtor will execute, file, record, or procure from third persons the financing statements, subordination Agreements, and other documents and take all other action that Secured Party deems necessary to perfect, to continue perfection of, or to maintain first priority of Secured Party's security interest in the Collateral. Debtor will place upon the Collateral and/or documents evidencing the Collateral the notice of Secured Party's security interest that Secured Party from time to time requires.

(f) Secured Party may file a photocopy of this Agreement as a financing statement evidencing Secured Party's security interest in the Collateral.

(g) Debtor will immediately notify Secured Party in writing of any change in Debtor's name, identity, or corporate structure, and of any change in the location of Debtor's place of business.

(h) Debtor will indemnify Secured Party with respect to all losses, damages, liabilities, and expenses (including attorney fees) incurred by Secured Party by reason of any failure of Debtor to comply with any of Debtor's obligations under this Agreement or by reason of any warranty or representation made by Debtor to Secured Party in this Agreement being false in any material respect.

(i) Debtor will maintain all tangible Collateral in good condition and repair and maintain fire and extended coverage insurance covering all tangible Collateral in

the amounts and against the risks that is customarily maintained by similar businesses in accordance with the Sublease. Each insurance policy will contain a standard lender's loss payable endorsement and will provide that its proceeds will be payable to Secured Party to the extent of Secured Party's interest in the Collateral and that the policy will not be canceled, and the coverage will not be reduced, without at least 10 days' prior written notice by the insurer to Secured Party and will be in form and substance satisfactory to Secured Party. Debtor will provide Secured Party with evidence of the insurance coverage. On Secured Party's request, Debtor will deliver to Secured Party all policies providing for such insurance. Debtor agrees that Secured Party may act as agent for Debtor in obtaining, adjusting, and settling such insurance and endorsing any draft evidencing proceeds of it.

(j) Debtor will pay, before they become delinquent, all taxes and assessments upon the Collateral or for its use or operation, and pay and perform when due all indebtedness and obligations under all leases, land contracts, or other agreements under which Debtor has possession of any real property upon which any of the Collateral shall at any time be located and under any mortgage or mortgages at any time covering any such real property.

7. Secured Party's Right to Perform. If Debtor fails to perform any obligation of Debtor under this Agreement, Secured Party may, without giving notice to or obtaining the consent of Debtor, perform that obligation on behalf of Debtor. For example, this may include performing maintenance work, obtaining insurance coverage for Collateral or for paying off liens on Collateral. Debtor will reimburse Secured Party on demand for any expense that Secured Party incurs in performing any such obligation and will pay to Secured Party interest on it, from the date the expense was incurred by Secured Party, at an annual rate of 8.5% per annum. Secured Party is not required to perform an obligation that Debtor has failed to perform. If Secured Party does so, that will not be a waiver of Secured Party's right to declare the indebtedness immediately due and payable by reason of Debtor's failure to perform.

8. Events of Default. Debtor is in default under this Agreement upon the happening of any of the following events:

(a) Breach or failure to perform any obligation under this Agreement, the Sublease, or any other document contemplated by this Agreement and the Sublease, and breach or failure to perform continues for ten (10) days after the Secured Party has given written notice to Debtor.

(b) The sale or encumbrance of any of the Collateral, or the making of any levy, seizure, execution or attachment to the Collateral;

(c) Insolvency of Debtor, appointment of a receiver on behalf of Debtor, assignment for the benefit of creditors of Debtor, or the commencement of

any proceeding under any insolvency law by or against Debtor, or determination by a court of competent jurisdiction that Debtor is insolvent;

(d) If any guaranty that now or later secures payment or performance of all or any part of the indebtedness is terminated or limited for any reason, without the written consent or agreement of Secured Party;

(e) If all or any material part of any tangible Collateral is destroyed or materially damaged by fire or other casualty, whether or not there is insurance coverage for the damage or destruction;

(f) Dissolution, merger, consolidation, sale, or insolvency of Debtor, or transfer of a substantial part of the assets of Debtor or any business being conducted by Debtor.

9. Rights on Default. Upon default, Secured Party shall have the remedies of a secured party under the laws of the State of Michigan, including but not limited to the right to notify account debtors that payments are to be made directly to Secured Party and to collect the proceeds of the Collateral. In the event of default by Debtor, Secured Party has the right to terminate the Sublease and retake and retain the Collateral free of all rights of Debtor and without prior notice to Debtor. Secured Party may obtain insurance, pay taxes, liens, or encumbrances in order to free the Collateral from such encumbrances, and all amounts so expended by the Secured Party shall, with interest thereon at the highest rate in effect for Debtor's obligations to Secured Party, constitute indebtedness of the Debtor secured hereby and be payable forthwith; but no such act or expenditure by Secured Party shall relieve Debtor from the consequence of such Default. In addition, Secured Party may take possession of any records concerning the Collateral wherever they may be found and apply any Collateral or its proceeds against the amounts owed Secured Party under the Sublease, with or without process of law, and may dispose of the Collateral or any portion thereof by public or private sale (and bid at such sale) or otherwise in any manner permitted by the applicable Uniform Commercial Code.

10. Notice of Default Disposition. Any notification of intended disposition of any of the Collateral required by law shall be deemed given if provided at least seven (7) days before such disposition.

11. Default Proceeds. Secured Party may apply any proceeds of any collection or disposition by Secured Party of any of the Collateral in the following order: to the reasonable expense of retaking, conserving, collecting (by suit or otherwise) or disposing of (by sale or otherwise) the Collateral, including reasonable attorneys' fees and legal expenses incurred, and then to the satisfaction of all the amounts owed to Secured Party under the Sublease.

12. Waiver. No delay on the part of Secured Party in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Secured Party of any right or remedy shall preclude other or further exercise thereof or the exercise of any other right or remedy.

Debtor waives all defenses based on suretyship or impairment of Collateral.

13. Perfection of Interest. Secured Party's security interest in the Collateral and Debtor's obligations under this Agreement will not be released or impaired if Secured Party fails to obtain, perfect, or secure priority of any other security for the indebtedness that is agreed to be given, or is given, by anyone else; and Secured Party is not required to sue upon or otherwise enforce payment of the indebtedness or any other security before exercising its rights under this Agreement or repossessing the leased Collateral in case of a Default.

14. Notice. Any notice under this Agreement required to be given to Debtor or Secured Party shall be deemed to be given in the form provided in the Sublease, unless stated otherwise herein.

15. Amendment. This Agreement may be amended only by a written instrument signed by the parties to be bound.

16. Interpretation. This Agreement contains the entire Agreement between the parties, and no oral Agreement shall be binding. This Agreement will be governed by and interpreted according to Michigan law and any claims to enforce it shall be brought in the Oakland County Courts.

Secured Party and Debtor have executed this Agreement as of the Effective Date identified above.

**DEBTOR**

**DETROIT BATTERY COMPANY, LLC,**

**a Michigan limited liability company**

Hillary Anne Gelineau

**By: HILLARY ANNE GELINEAU**

**Its: Member**

**SECURED PARTY**

**MOTOWN BATTERY COMPANY, INC.,**

**a Michigan corporation**

[signature]

**By: CHRIS MILTIMORE**

**Its: President**